UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILMA ABERNATHY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 4:19-CV-00009-NAB |
| RACHEL WHITE, et al., | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of Defendants Rachel White ("White"), Mary Mans ("Mans"), Robbin Russell ("Russell"), Reginald Brown ("Brown"), and Karen Nelson ("Nelson") (collectively "Individual Defendants")[1], to dismiss Plaintiff Wilma Abernathy's ("Plaintiff" or "Abernathy") complaint for failure to state a claim on which relief may be granted, and on the basis of various absolute immunities. (Doc. 23). The motion to dismiss was originally filed by Defendants Mans and White, and subsequently, the other Individual Defendants moved to join in the motion. (Docs. 30 and 36). For the reasons set forth below, the Individual Defendants' motion to dismiss Counts I, II, and V, as well as the motions for joinder, will be granted. Count III of the complaint will be dismissed without prejudice, as the Court declines to exercise supplemental jurisdiction over that claim.

---

[1] Rachel White is being sued individually and in her capacity as former Mayor of the City of Bel-Ridge, Missouri. As mayor, White was also a member of the Board of Aldermen of Bel-Ridge at all times relevant. *See* Mo. Rev. Stat. § 79.120. Mary Mans is sued individually and in her capacity as a former Alderwoman of the City of Bel-Ridge. Robbin Russell is sued individually and in her capacity as Alderwoman of the City of Bel-Ridge. Reginald Brown is sued individually and is his capacity as Alderman of the City of Bel-Ridge. Karen Nelson is sued individually and in her capacity as Alderwoman of the City of Bel-Ridge. The City of Bel-Ridge is also a Defendant in the complaint, but did not join in the instant motion to dismiss. The City of Bel-Ridge recently filed a separate motion to dismiss that is currently pending before the Court.

## I. BACKGROUND

Plaintiff, a current member of the Board of Aldermen of the City of Bel-Ridge, Missouri, ("City") seeks to hold Defendants liable for certain events that occurred during 2017 and 2018 when Abernathy was serving in a prior term on the Board of Aldermen. Plaintiff alleges that on October 30, 2017, she "cooperated with the initiation of a formal complaint to the Missouri Attorney General" regarding alleged violations of the Missouri Sunshine Law[2] by the City. (Doc. 3 at 3). At that time, Plaintiff signed an affidavit setting forth alleged Sunshine Law violations, and her affidavit was subsequently forwarded to the Missouri Attorney General as an enclosure to a letter prepared by attorney Michael K. Daming, who indicated that he represented the interests of Glenn Tope, a resident of the City of Bel-Ridge. *Id*.

Plaintiff alleges that, in retaliation for her cooperation with the Sunshine Law complaint, the Individual Defendants, on February 15, 2018, instituted impeachment proceedings against her. *Id*. The bill of impeachment set out five charges against Plaintiff, including violations of closed records laws, accepting funds meant as donations to the City and converting them to her personal use, and providing false statements in the affidavit Plaintiff signed. (Doc. 27 at 3). She further alleges that on March 6, 2018, the Individual Defendants adopted an amended bill of impeachment, and finally, in July 2018, the impeachment proceeding was permanently abandoned. *Id*. Plaintiff also alleges that the Individual Defendants voted in favor of a fine that the City wrongfully imposed against her as a sanction for voicing her objections to the impeachment proceedings, and then approved the withholding of her salary to satisfy the fine. *Id*. Plaintiff acknowledges that her full salary was later paid to her, but complains that she suffered overdraft fees and reputational harm as a result of the fine.

---

[2] Mo. Rev. Stat. § 601.011 *et seq.*

Plaintiff's complaint contains five counts: (1) Count I for Abuse of Process against all Defendants; (2) Count II for Malicious Prosecution against all Defendants; (3) Count III for Defamation against the Individual Defendants; (4) Count IV for Conversion against only the City; and (5) Count V, a 42 U.S.C. § 1983 claim against all Defendants alleging violations of her First and Fourteenth Amendment rights. As the claim for conversion in Count IV is not directed against the individually named Defendants, the Court will not address Count IV in this order.

Plaintiff seeks damages in excess of $25,000, plus punitive damages, attorney's fees and costs.

## II. DISCUSSION

For a plaintiff to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

### A. Count One—Abuse of Process

To prevail on an abuse of process claim in Missouri, a plaintiff must prove the following elements: "(1) the defendant made an illegal, improper, perverted use of process, which was neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process; and (3) the plaintiff sustained damages as a result." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 320 (2010) (citations omitted).

The Individual Defendants argue that Plaintiff cannot state a claim for abuse of process, because Missouri courts "routinely hold that a claim for abuse of process will only lie where the defendant has misused duly issued court process," and they did not do so in this case. (Doc. 27 at 15). Plaintiff does not cite to any Missouri case where the court allowed an abuse of process claim to proceed on anything other than the issuance of court process. However, Plaintiff counters that the "process" connected to the impeachment proceedings was sufficiently analogous to the process that emanates from or rests upon court authority as to sufficiently state a claim for abuse of process. Other Missouri plaintiffs have made comparable arguments, asserting that the process involved in administrative or similar proceedings can suffice to state a claim for abuse of process, but so far such attempts have been to no avail. *See e.g., Crowe v. Horizon Homes, Inc.,* 116 S.W.3d 618, 623 (2003) (the defendants' alleged actions "did not make use of a process that emanated from or rested upon court authority" and thus "do not meet the elements of a recognized cause of action."); *Misischia v. St. John's Mercy Medical Center*, 30 S.W.3d 848, 862 (2000) ("Plaintiff concedes Missouri courts have not addressed this issue [as to whether "process" unrelated to court processes may suffice to state a claim for abuse of process] . . . "but courts in other states have held that abuse of administrative processes may give rise to a claim for abuse of process. Again, we decline to extend the law to the case at bar.") (overruled on other grounds).

Because Plaintiff alleges only the improper filing of impeachment proceedings against her, as opposed to actions that "ma[d]e use of a process that emanated from or rested upon court authority," she has failed to state a claim for abuse of process under Missouri law.

### B. Count Two—Malicious Prosecution

The elements of a malicious prosecution claim in Missouri are: "(1) the commencement of an earlier suit against plaintiff, (2) instigation of the suit by defendant, (3) termination of the suit in plaintiff's favor, (4) lack of probable cause for the suit, (5) malice by defendant in instituting the suit, and (6) damages to plaintiff resulting from the suit." *State ex rel. Police Ret. Sys. v. Mummert*, 875 S.W.2d 553, 555 (Mo. Banc 1994).

Defendants argue that Plaintiff's claim must fail because Missouri courts have never recognized a cause of action for malicious prosecution outside of the context of a civil or criminal lawsuit. (Doc. 27 at 18). Defendants note that Missouri courts have been given multiple opportunities to extend the tort of malicious prosecution to other types of proceedings, and have consistently refused to do so. *See, e.g., Holland v. Healthcare Servs. of the Ozarks*, 347 S.W. 3d 166, 168 n.2 (Mo. Ct. App. 2011) ("No Missouri court has recognized a claim for malicious prosecution arising from an administrative proceeding. The underlying proceeding has always been either a civil or criminal lawsuit."); *Teefey v. Cleaves*, 73 S.W.3d 813, 816 (Mo. Ct. App. 2002) ("Were we to pass favorably on [plaintiffs'] cause of action, we would be the first Missouri court to apply a malicious prosecution claim to an administrative proceeding. No Missouri court has recognized the claim in this context.").

Plaintiff does not direct the Court to any Missouri case that has extended the tort of malicious prosecution to proceedings other than civil or criminal lawsuits, and the Court has been unable to find any such cases. Plaintiff asserts that because she has alleged that the impeachment

5

proceeding was commenced against her, she has sufficiently satisfied that first element of the cause of action. However, in alleging that the impeachment proceeding was an "earlier suit" sufficient to satisfy the first element of the tort, Plaintiff is couching a legal conclusion as a factual allegation, and the Court is not bound to accept it as true. *See Torti*, 868 F.3d at 671. The Court is not inclined to supplant the judgment of the Missouri courts and extend the law in the manner required to sustain Plaintiff's claim. Plaintiff has failed to state a claim for the tort of malicious prosecution, and Count II against the Individual Defendants must be dismissed.

### C. Count Three—Defamation

Plaintiff alleges that the Individual Defendants made defamatory statements against her during the impeachment proceedings, as well as during meetings of the Board of Aldermen. Specifically, Plaintiff alleges that they called her a "liar" and a "rat."

The Individual Defendants raise as an affirmative defense that their statements were shielded by absolute privilege. Defendants cite to Missouri cases indicating that statements made in legislative, judicial, quasi-judicial, or executive proceedings are absolutely privileged from liability for defamation. *See Pulliam v. Bond*, 406 S.W.2d 635, 640 (Mo. banc 1966) ("The classic examples of the application of an absolute privilege are the proceedings of legislative bodies . . . [and] judicial proceedings."); *Remington v. Wal-Mart Stores, Inc.,* 817 S.W.2d 571, 574 (Mo. App. Ct. 1991) ("Statements made during the proceedings of a judicial or quasi judicial body are absolutely privileged if they are relevant to the issues before the body."); *Barge v. Ransom*, 30 S.W.3d 889, 891 (Mo. App. Ct. 2000) ("An absolute privilege provides complete immunity for defamation, regardless of motive."). However, as Defendants acknowledge, Missouri courts have not yet addressed whether this privilege extends to members of local legislative bodies, such as the Board of Alderman.

Defendants contend that the clear majority view across the nation is that this type of absolute immunity does extend to members of such local legislative bodies and their proceedings, and this Court should apply the privilege in this case. *See* Restatement (Second) Tort Sec. 590 ("A member of . . . a State or local legislative body is absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions."); *see also, e.g., Voelbel v. Town of Bridgewater*, 747 A.2d 252 (1999) ("[T]he sounder rule of law favors granting municipal officials, acting in a legislative capacity, absolute immunity for their comments made during a town meeting regarding town matters."); *Noble v. Ternyik*, 539 P.2d 658 (Or. 1975) (extending the privilege to member of a port commission and holding that the "trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies.").

The Court agrees that extending the privilege to local legislative bodies is the clear majority view nationwide. However, due to the unresolved nature of this issue in Missouri, the Court concludes that it is preferable to decline jurisdiction over this claim and allow this issue to be resolved by the state court.[3] There is no independent basis for jurisdiction over Count III, as it does not arise under federal law and all of the parties are citizens of Missouri. At best, the Court has only supplemental jurisdiction over this Count because it is "so related to the claims in the action with [the Court's] original jurisdiction that" it forms "part of the same case or controversy under Article III of the Constitution." 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law. . .." *Id*. § 1367(c)(1). The Court's exercise of its power to decline

---

[3] The parties have not raised this issue. Nonetheless, the Court is permitted to raise the issue *sua sponte*. *See Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (holding that a trial court may *sua sponte* decline supplemental jurisdiction based on § 1367(c)(3)).

7

supplemental jurisdiction is discretionary. *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287 (8th Cir. 1998). Accordingly, the Court declines to exercise its supplemental jurisdiction over this claim, and Count III for defamation against the Individual Defendants is dismissed without prejudice to the Plaintiff's ability to bring such a claim in state court.

### D. Count V—Violations of 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Plaintiff alleges that the Individual Defendants violated her First and Fourteenth federal constitutional rights by instituting and pursuing her impeachment, allegedly in retaliation for her exercise of freedom of speech. The Individual Defendants assert that they are entitled to absolute immunity with regard to Count V.

Though Congress enacted 42 U.S.C. § 1983 to provide a remedy for violations of constitutional rights, it "was not intended to abrogate the federal common law immunities enjoyed by persons performing certain governmental functions." *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611 (8th Cir. 1980). The common law grants absolute immunity to judges and certain judicial officers acting within the scope of their judicial duties. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009); *Brown v. Grisenauer*, 970 F.2d 431, 435 (8th Cir. 1992). Considerations of public policy underlie this type of immunity, including a "concern that harassment by unfounded litigation" could cause a "deflection of the [officer's] energies from his public duties and also lead the [officer] to shade his decisions instead of exercising the independence of judgment required by his public trust." *See Van de Kamp,* 555 U.S. at 341. This

"absolute immunity may not apply when an [officer] is not acting as an officer of the court, but is instead engaged in . . . administrative tasks." *Id.* at 342. "To decide whether absolute immunity attaches to a particular . . . activity, one must take account of [the] functional considerations" of the activity, including whether the activity is related to the core judicial duties of the officer. *Id.* at 342, 346.

Courts have likewise held that legislators are entitled to absolute immunity for actions taken in their legislative capacity. *See Brown*, 970 F.2d at 435-36 (gathering cases). Legislators enjoy absolute immunity in order "to insure that the legislative function may be performed independently without fear of outside interference." *Id*. at 436. Legislative immunity allows persons acting in a legislative capacity to act without concern for fear of personal liability. *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998).

In determining whether either of these absolute immunities apply, "one must take account of [the] functional considerations" of the activity, including whether the activity is related to the core judicial or legislative duties of the officer. *Van de Kamp,* 555 U.S. at 342, 346. The "characterization of the proceeding is a question of federal law for purposes of immunity analysis . . . [and] the various activities of most [government] officials cannot be [easily or definitively] characterized as only administrative, legislative, or judicial." *Brown* 970 F.2d at 436. This functional approach looks not to the title of an individual, but rather, asks what function the particular official was serving at the time of the allegedly unlawful conduct. *Id.* For example, under the functional approach, the Supreme Court held that a mayor was acting in a legislative capacity when he introduced and signed into law an ordinance, even though he was formally an executive official. *See Bogan*, 523 U.S. at 55. Similarly, the Court in *Brown* held that the members of the Board of Aldermen of O'Fallon, Missouri, were entitled to immunity from suit

for the Section 1983 claims brought against them by the mayor, arising from impeachment proceedings against him. *Brown*, 970 F.2d at 439.

The question then, is whether the Individual Defendants were acting in a classically legislative or judicial capacity during the impeachment proceedings against Plaintiff, sufficient to entitle them to absolute immunity in this context. The Court finds *Brown* to be particularly instructive here. The circumstances in that case are strikingly similar to the case at hand. In *Brown*, after the relationship between the mayor and the board of aldermen deteriorated, the board passed a resolution of impeachment against the mayor. *Id*. at 433. The board then conducted an impeachment inquiry, after which they voted to impeach the mayor. *Id*. The mayor subsequently filed a 42 U.S.C. § 1983 action against the members of the board of aldermen, alleging that the impeachment proceedings violated his federal constitutional rights, as well as certain state laws. *Id*. at 434. The defendants filed a motion to dismiss on the grounds of failure to state a claim and absolute judicial immunity. *Id*. The district court concluded that the board was not entitled to absolute immunity. *Id*. The Eighth Circuit reversed, holding that the board was entitled to absolute immunity from damages liability. *Id*. at 435.

The Eighth Circuit analyzed the issue using the functional approach discussed above, and found that while the act of voting to impeach "could be characterized as legislative," the act of voting alone "does not necessarily determine that he or she was acting in a legislative capacity." *Id*. (quotation omitted). The court determined that impeachment is not a truly legislative act, but is rather "an act that happens to have been done by legislators." *Id*. at 437. The court noted that "classic" legislative functions are enacting ordinances or establishing municipal policy, and the impeachment proceedings "did not involve the formulation of policy governing future conduct for all or a class of the citizenry" in such a manner. *Id*. They went on to explain that "impeachment

proceedings are essentially judicial or adjudicatory in nature," and "the board of aldermen, sitting as a board of impeachment, was required to perform an adjudicatory function." *Id*. As the court noted, though, that determination did not end their immunity analysis because, to be entitled to absolute immunity, the board of alderman, in bringing impeachment proceedings, must have been functioning in a "'classic' adjudicatory" fashion "so as to justify the protection of absolute immunity as opposed to only qualified immunity." *Id*. The court proceeded to analyze the function of the board of aldermen in impeachment proceedings according to the factors outlined in *Cleavinger* and *Butz*, which include: "(a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985), citing *Butz v. Economou*, 438 U.S. 478, 512 (1978). After carefully considering all the factors, the Eighth Circuit concluded that "on balance, the members of a municipal board of impeachment fall on the absolute immunity side of the line for actions taken in that capacity." *Brown*, 970 F.2d at 438.

Plaintiff argues that *Brown* is distinguishable, because in her case the "adopted bills of impeachment . . . were facially deficient, fatally flawed, and otherwise . . . in violation of applicable law." (Doc. 34 at 12). However, this allegation would not seem to distinguish her case from *Brown*. In *Brown*, the plaintiff made similar claims about the deficiencies of his impeachment, and in fact went on to successfully appeal to the state court, which held that he had been improperly impeached. *Brown* 970 F.2d at 434. Plaintiff also argues that *Brown* is distinguishable because the Individual Defendants never actually voted as a board of

impeachment, but rather, simply abandoned the process before seeing it through to the end. However, Plaintiff cites no cases supporting her contention that this is a controlling distinction, and the Court does see how the fact that the impeachment proceedings were discontinued changes the nature of the proceedings in any material manner.

### III. CONCLUSION

Accordingly, for all the reasons stated above,

**IT IS HEREBY ORDERED** that the motion for joinder filed by Individual Defendants Russell, Brown, and Nelson is **GRANTED.** (Docs. 30 and 36).

**IT IS FURTHER ORDERED** that the motion to dismiss filed by the Individual Defendants is **GRANTED** in full with respect to Counts I, II, and V, and those Counts are **DISMISSED WITH PREJUDICE**. (Doc. 23). The Court does not address Count IV at this time, as it was brought against only the City, and not the Individual Defendants.

**IT IS FINALLY ORDERED** that the Court declines to exercise supplemental jurisdiction over Count III of the complaint, and Count III is **DISMISSED WITHOUT PREJUDICE.**

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2019.